UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **DAVID HAMILTON** | **CIVIL ACTION** |
| **VERSUS** | **NO. 06-3196** |
| **BURL CAIN, WARDEN** | **SECTION "R"(4)** |

### REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an Evidentiary Hearing if necessary, and to submit Proposed Findings and Recommendations pursuant to **Title 28 U.S.C. § 636(b)(1)(B) and (C),** and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**. Upon review of the entire record, the Court has determined that this matter can be disposed of without an Evidentiary Hearing. *See* 28 U.S.C. § 2254(e)(2).[1]

### I.   Factual Background

The petitioner, David Hamilton ("Hamilton"), is incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[2] On August 27, 1999, Hamilton and three co-defendants, Joshua M. Chefney, Terry M. Bazile, and Jessie Hamilton, were charged by Bill of Information in Orleans

---

[1] Under Title 28 U.S.C. § 2254(e)(2), an Evidentiary Hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2] Rec. Doc. No. 1.

Parish with armed robbery of a Bank One branch located at 4401 South Claiborne Avenue in New Orleans, Louisiana.[3]

The record reflects that, at 10:00 a.m. on June 3, 1999, Nancy Saltzman, a bank teller, noticed four males wearing bandannas, at least one of them was armed, enter the bank.[4]  The men told everyone to get down.  According to Allie Timberlake, another teller, all four robbers were wearing sunglasses, and at least one was wearing a baseball cap, in addition to the bandannas.

After one robber jumped over the counter next to her, Timberlake bent down and "duck-walked" away from him.  After the robbery, she returned to her teller window and saw that all of the money was gone from her bottom cash drawer.  She also noticed a black garbage bag on the floor that she knew did not come from the bank, because they used white bags in their trash cans.

The four co-defendants were eventually identified by the FBI Agents and New Orleans Police Officers.  In doing so, they used a bank surveillance photo of one of the gunmen and latent fingerprints obtained from the getaway car and the bank.

On November 18, 1999, co-defendant Joshua Chefney entered a plea of guilty and was sentenced to eight years in prison.[5]  The State later entered a nolle prosequi dismissing the charges against co-defendants Terry Bazile and Jessie Hamilton.[6]

---

[3]St. Rec. Vol. 1 of 6, Docket Master, entry dated 8/27/99.  The record does not contain a copy of the Bill of Information.  This was an issue addressed on appeal in the state courts.

[4]The facts of the case were taken from the opinion of the Louisiana Fourth Circuit Court of Appeal on out-of-time appeal.  *State v. Hamilton*, 834 So.2d 567, 568-69 (La. App. 4th Cir. 2002); St. Rec. Vol. 4 of 6, 4th Cir. Opinion, 2002-KA-1281, 12/4/02.

[5]St. Rec. Vol. 1 of 6, Minute Entry, 11/18/99; St. Rec. Vol. 3 of 6, Plea of Guilty (Chefney), 11/17/99.

[6]St. Rec. Vol. 1 of 6, Minute Entry, 7/6/00.

Hamilton was tried by a jury on August 1, 2, and 3, 2000.[7] He was found guilty as charged.[8] On September 20, 2000, the Trial Court sentenced him to serve 50 years in prison without the benefit of parole, probation, or suspension of sentence.[9] At the sentencing hearing, the State indicated that it was unsure of its decision to file a bill charging Hamilton as a multiple offender and no multiple bill was filed at that time.[10]

Hamilton did not appeal or seek reconsideration of his sentence. His conviction became final five days later, on September 27, 2000. *Roberts v. Cockrell*, 319 F.3d 690, 694-95 (5th Cir. 2003) (under federal habeas law, a conviction is final when the state defendant does not timely proceed to the next available step in the state appeal process); *see Cousin v. Lensing*, 310 F.3d 843, 845 (5th Cir. 2002) (petitioner's guilty pleas became final at the end of the five-day period for filing a notice of appeal under La. Code Crim. Proc. art. 914[11]); La. Code Crim. Proc. art. 13 (weekends and holidays not included in calculation of period less than seven days.)

## II. **Procedural Background**

Six weeks later, on December 13, 2000, the State filed a bill charging Hamilton as a multiple offender. After numerous continuances of the hearing on the multiple bill, and 341 days after his conviction was final, Hamilton submitted pro se a writ application to the Louisiana Fourth Circuit

---

[7]St. Rec. Vol. 1 of 6, Trial Minutes (2 pages), 8/1- 3/00; St. Rec. Vol. 4 of 6, Trial Transcript, 8/1/00; Trial Transcript, 8/2/00; Trial Transcript, 8/3/00.

[8]St. Rec. Vol. 1 of 6, Trial Minutes, p.2, 8/3/00; Jury Verdict, 8/3/00.

[9]St. Rec. Vol. 1 of 6, Sentencing Minutes, 9/20/00; St. Rec. Vol. 4 of 4, Sentencing Transcript, 9/20/00.

[10]St. Rec. Vol. 4 of 6, Sentencing Transcript, p.8, 9/20/00.

[11]At the time of the conviction, La. Code Crim. Proc. art. 914 required that a criminal defendant move for leave to appeal within five days of the order or judgment that is being appealed or of a ruling on a timely motion to reconsider a sentence. Failure to move timely for appeal under Article 914 renders the conviction and sentence final at the expiration of the period for filing the motion for appeal. *State v. Counterman*, 475 So.2d 336, 338 (La. 1985). Article 914 was later amended by La. Acts 2003, No. 949, § 1 to provide 30 days for filing of the notice of appeal.

dated September 4, 2001.[12] In the writ application, filed by the Court on September 10, 2001, he requested that he be allowed to appeal his conviction pending the outcome of the multiple bill proceeding.[13] On October 31, 2001, the Louisiana Fourth Circuit granted the writ for the sole purpose of transferring it to the Trial Court to grant an appeal and appoint counsel.[14] The Trial Court granted Hamilton an out-of-time appeal on January 14, 2002.[15]

On February 8, 2002, Hamilton filed pro se another writ application with the Louisiana Fourth Circuit requesting an order to have the Trial Court provide copies of portions of the record to the petitioner and suggesting that the Trial Court had not yet moved forward with the granting of an out-of-time appeal.[16] The Court denied the application on April 8, 2002, because the Trial Court had in fact granted the out-of-time appeal and the Court noted that the request for copies was to be made after the appeal was lodged.[17]

On September 13, 2002, after almost two years of continuances, the Trial Court granted defense counsel's Motion to Quash Multiple Offender Bill of Information.[18]

---

[12] St. Rec. Vol. 5 of 6, 4th Cir. Writ Application, 2001-K-1708, 9/10/01 (dated 9/4/01).

[13] *Id.*

[14] St. Rec. Vol. 5 of 6, 4th Cir. Order, 2001-K-1708, 10/31/01.

[15] St. Rec. Vol. 1 of 6, Minute Entry, 1/14/02.

[16] St. Rec. Vol. 5 of 6, 4th Cir. Writ Application, 2002-K-0271, 2/8/02; Amended Writ Application, 2002-K-0271, 2/22/02.

[17] St. Rec. Vol. 5 of 6, 4th Cir. Order, 2002-K-0271, 4/8/02. The Court issued a similar order on July 10, 2002, denying Hamilton's mandamus request. St. Rec. Vol. 1 of 6, 4th Cir. Order, 2002-K-1146, 7/10/02. The record does not contain a copy of this writ application.

[18] St. Rec. Vol. 1 of 6, Motion to Quash Multiple Offender Bill of Information (undated); Minute Entry, 9/13/02; St. Rec. Vol. 2 of 6, Transcript, 9/13/02.

In the out-of-time appeal, Hamilton's counsel raised three grounds for relief: (1) the Trial Court erred in denying the defense motion to continue the trial; (2) the sentence was excessive; and (3) the Bill of Information was missing from the record.  On December 4, 2002, the Louisiana Fourth Circuit affirmed the conviction and sentence finding no merit to the first two claims and finding that the missing Bill of Information was harmless error.[19]

Over five months later, on May 12, 2003, Hamilton submitted an untimely Writ Application to the Louisiana Supreme Court which was file-stamped on June 11, 2003.[20]  The Louisiana Supreme Court denied the Writ Application on May 21, 2004, without reasons.[21]

Hamilton claims that he thereafter submitted a Uniform Application for Post Conviction Relief to the Trial Court on July 15, 2004.[22]  He raised three claims: (1) he was denied equal protection where the appellate court misapplied law regarding the missing Bill of Information; (2) the evidence was insufficient to prove that his fingerprints were left at the bank during the robbery; and (3) counsel was ineffective for failure to conduct an independent investigation, and failure to secure the testimony of eyewitness, an alibi witness, the co-defendant, and a fingerprint expert for the defense.  The record does not contain a ruling by the Trial Court.

---

[19]*State v. Hamilton*, 834 So.2d at 567; St. Rec. Vol. 4 of 6, 4th Cir. Opinion, 2002-KA-1281, 12/4/02.

[20]St. Rec. Vol. 5 of 6, La. S. Ct. Writ Application, 03-KH-1641, 6/11/03 (signed 5/12/03, postmark not indicated).  La. S.Ct. R. X§5provides that an application seeking review of the judgment of the court of appeal shall be filed or postmarked within 30 days of the issuance of the appellate court's judgment or denial of rehearing.  See *Marshall v. Cain*, 155 Fed. Appx. 769, 2005 WL 3115095 (5th Cir. Nov. 22, 2005) (mailbox rule controls under La. S. Ct. Rule X§5); *see also* La. Code Crim. Proc. art. 922(A).  As discussed later in this opinion, Hamilton did not file the writ application within the allowed time period.

[21]*State ex rel. Hamilton v. State*, 874 So.2d 163 (La. 2004); St. Rec. Vol. 5 of 6, La. S. Ct. Order, 2003-KH-1641, 5/21/04.

[22]St. Rec. Vol. 6 of 6, Uniform Application for Post Conviction Relief, signed 7/15/04.  The copy in the record does not have a file-stamp and the only copy thereof is attached to as an exhibit to his subsequent application for writ of mandamus, addressed *infra*.

On July 7, 2005, Hamilton filed an application for writ of mandamus with the Louisiana Fourth Circuit seeking an order to have the Trial Court rule on his application for post-conviction relief.[23] The Louisiana Fourth Circuit denied the Application on June 23, 2005.[24] After review of Hamilton's application for post-conviction review, the Court found no merit to the claims raised. His subsequent writ application to the Louisiana Supreme Court was denied without reasons on April 28, 2006.[25]

### III.    Federal Petition

On June 15, 2006, Hamilton filed a Petition for Federal Habeas Corpus Relief in which he alleged the following two grounds for relief:[26] (1) the evidence was insufficient to prove the petitioner's guilt; and (2) he received ineffective assistance of counsel where he failed to interview and secure eyewitnesses, interview and present an alibi witness, and conduct and independent pretrial investigation into the factual basis of the state's case.

The State filed an opposition response to Hamilton's petition alleging that the petition was not timely filed and, alternatively, that the claims are without merit.[27] Hamilton replied to the State's opposition. He argues, albeit incorrectly, that his conviction did not become final until after the conclusion of his out-of-time appeal. He also argues that his delay in seeking review of his appeal

---

[23]St. Rec. Vol. 6 of 6, 4th Cir. Writ Application, 2005-K-0895, 6/7/05.

[24]St. Rec. Vol. 6 of 6, 4th Cir. Order, 2005-K-0895, 6/23/05.

[25]St. Rec. Vol. 6 of 6, La. S. Ct. Writ Application, 05-KH-2063, 8/5/05 (signed 7/11/05); *State ex rel. Hamilton v. State*, 927 So.2d 281 (La. 2006); St. Rec. Vol. 6 of 6, La. S. Ct. Order, 2005-KH-2063, 4/28/06.

[26]Rec. Doc. No. 1.

[27]Rec. Doc. No. 7.

in the Louisiana Supreme Court should be excused because his multiple transfers kept him from receiving timely notice of the appellate court's ruling. Finally, he argues that his claims have merit.

## IV. Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[28] applies to Hamilton's petition, which is deemed filed in this Court under the federal mailbox rule on June 8, 2006.[29]

The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

In this case, the State has raised the defense that Hamilton's federal petition was not timely filed. The Court will address the State's limitations defense.

---

[28]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996. *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)). The AEDPA was signed into law on that date and it does not specify an effective date for its non-capital amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[29]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999), *cert. denied*, 529 U.S. 1057 (2000); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995). The clerk of court filed Hamilton's federal habeas petition on June 15, 2006, when the filing fee was paid. Hamilton dated his signature on the petition on June 8, 2006. This is the earliest date on which he could have been submitted the pleadings to prison officials for mailing. The fact that he paid the filing fee on a later date does not alter the application of the federal mailbox rule to his pro se petition. *See Cousin*, 310 F.3d at 843 (mailbox rule applies even if inmate has not paid the filing fee at the time of mailing) (citing *Spotville*, 149 F.3d at 374).

## V.    Statute of Limitations

The AEDPA requires a petitioner to bring his § 2254 claim within one year of the date his conviction became final.[30] *Duncan v. Walker*, 533 U.S. 167, 179-80 (2001). As set forth above, Hamilton's conviction became final on September 27, 2000, when he did not file a timely notice of appeal or motion to reconsider his sentence. A state conviction is final for AEDPA limitations purposes at the conclusion of the original period for seeking direct review and not at conclusion of an out-of-time appeal granted on application for post-conviction relief. *McGee v. Cain*, 104 Fed. Appx. 989, 991-992 (5th Cir. July 28, 2004) (applying *Salinas v. Dretke*, 354 F.3d 425 (5th Cir.), *cert. denied*, 541 U.S. 1032 (2004)). The out-of-time appeal did not revive Hamilton's already final conviction or otherwise restart the calculation of the AEDPA filing period. *Id*.

Thus, under the plain language of § 2244, he had until September 27, 2000, to file a timely federal application for habeas corpus relief and he failed to do so. Thus, literal application of the statute would bar Hamilton's § 2254 petition as of that date unless he is entitled to tolling as provided for by the AEDPA.

---

[30] The statute of limitations provision of the AEDPA provides for other triggers which do not apply here:
(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--
A.   the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
B.   the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State actions;
C.   the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
D.   the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection. 28 U.S.C. § 2244(d).

Section 2244(d)(2) provides that the time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation. *See* 28 U.S.C. § 2244(d)(2). In order for a State post-conviction application to be considered "properly filed" within the meaning of § 2244(d)(2), the applicant must have complied with all of the State's procedural requirements, such as timeliness and place of filing. *Pace v. DiGuglielmo*, 544 U.S. 408, 413-414 (2005); *Williams v. Cain*, 217 F.3d 303, 306-07 n.4 (5th Cir. 2000) (quoting *Smith v. Ward*, 209 F.3d 383, 384-85 (5th Cir. 2000)); *Villegas v. Johnson*, 184 F.3d 467, 469 (5th Cir.), *reh'g denied*, 196 F.3d 1259 (5th Cir. 1999). The United States Fifth Circuit has clarified its prior opinions to the contrary and resolved that timeliness in Louisiana, for purposes of the AEDPA, requires application of a prison mailbox rule to state pleadings. *Causey v. Cain*, 450 F.3d 601, 604-05 (5th Cir. 2006).

A matter is "pending" for § 2244(d)(2) purposes "as long as the ordinary state collateral review process is 'in continuance.'" *Carey v. Saffold*, 536 U.S. 214, 219-20 (2002); *Williams v. Cain*, 217 F.3d at 310 (a matter is "pending" for Section 2244(d)(2) purposes until further appellate review is unavailable under Louisiana's procedures.") (quoting *Bennett v. Artuz*, 199 F.3d 116, 120 (2nd Cir. 1999), *aff'd*, 531 U.S. 4 (2000)); *see also Melancon v. Kaylo*, 259 F.3d 401, 405 (5th Cir. 2001).

The phrase "other collateral review" in the statute refers to state court proceedings challenging the pertinent judgment subsequently challenged in the federal habeas petition. *Dillworth v. Johnson*, 215 F.3d 497, 501 (5th Cir. 2000) (state habeas petition challenging a prior conviction in one county was other collateral review even though filed as a challenge to a second conviction in a different county); *Nara v. Frank*, 2001 WL 995164, slip op. at *5 (3rd Cir. Aug. 30,

2001) (motion to withdraw a guilty plea is "other collateral review"). A "pertinent judgment or claim" requires that the state filings for which tolling is sought must have challenged the same conviction being challenged in the federal habeas corpus petition and must have addressed the same substantive claims now being raised in the federal habeas corpus petition. *Godfrey v. Dretke*, 396 F.3d 681, 686-88 (5th Cir. 2005).

The federal courts have also determined that requests for transcripts and copies of documents from the record, like those occasionally filed by petitioner, are not "applications for post-conviction or other collateral review" and therefore do not affect the timeliness calculations. *Osborne v. Boone*, 176 F.3d 489, 1999 WL 203523 (10th Cir. Apr. 12, 1999) (Table, Text in Westlaw) (motion for transcripts is not "other collateral review" for tolling purposes); *see also Brown v. Cain*, 112 F. Supp.2d 585, 587 (E.D. La. 2000), *aff'd*, 239 F.3d 365 (5th Cir. 2000); *Gerrets v. Futrell*, 2002 WL 63541 (E.D. La. Jan. 16, 2002); *Jones v. Johnson*, 2001 WL 1006062 at *3 (N.D. Tex. Aug. 13, 2001) (petitioner should file application and then continue to gather transcripts); *Grayson v. Grayson*, 185 F. Supp.2d 747, 751-52 (E.D. Mich. 2002) (delay in receipt of transcript, not required to file an application, does not warrant equitable tolling).

In this case, Hamilton's AEDPA filing period began to run on September 28, 2000, the day after his conviction became final. The filing period ran uninterrupted for 365 days, until September 27, 2001, when it expired. Hamilton had not properly filed state application for post-conviction relief or other collateral review pending during that time period. He was therefore not entitled to any recognizable statutory tolling.

The Court is well aware that the State filed a multiple bill against Hamilton during this time period, on December 13, 2000. However, the multiple offender proceeding was neither an

application for state post-conviction nor other collateral review of the pertinent judgment or claim which would have entitled Hamilton to statutory tolling under § 2244(d)(2). *See Moore v. Cain*, 298 F.3d 361, 367 (5th Cir. 2002), *cert. denied*, 537 U.S. 1236 (2003). The Court's research reveals no case law which would indicate otherwise.

Nevertheless, the post-AEDPA jurisprudence also provides for equitable tolling where rare or extraordinary circumstances may have prevented a diligent petitioner from timely pursuing federal habeas corpus. *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005); *Fisher v. Johnson*, 174 F.3d 710, 713 (5th Cir. 1999), *cert. denied*, 531 U.S. 1164 (2001); *Cantu-Tzin v. Johnson*, 162 F.3d 295, 299 (5th Cir. 1998); *Davis v. Johnson*, 158 F.3d 806, 810 (5th Cir. 1998), *cert. denied*, 526 U.S. 1074 (1999). Equitable tolling is warranted <u>only</u> in situations where the petitioner was actively misled or is prevented in some extraordinary way from asserting his rights. *Pace*, 544 U.S. at 418-19; *Cousin*, 310 F.3d at 848.

In this case, Hamilton was represented by counsel during the entire criminal process, yet a timely appeal was not filed. He is not entitled to any tolling even if the delay is the result of counsel's error. *Salinas*, 354 F.2d at 432 (quoting *Cousin*, 310 F.3d at 848). However, it could be argued that the pendency and delay of Hamilton's multiple offender proceeding attributed to the more than one-year-delay in seeking the out-of-time appeal eventually granted on January 14, 2002. With this is mind, and affording Hamilton every benefit, the Court may consider equitable tolling of the period during which the multiple bill was pending, from December 13, 2000 to September 13, 2002. Under a calculation using this equitable tolling period, Hamilton's federal petition is still untimely.

Hamilton's one-year AEDPA filing period would run for 76 days, from September 28, 2000, the day after his conviction became final, until December 13, 2000, when the multiple bill was filed. The period would remained tolled from December 13, 2000, until the out-of-time appeal was no longer pending.

The Louisiana Fourth Circuit issued its opinion affirming the conviction and sentence on December 4, 2002. Hamilton had thirty days, or until January 5, 2003,[31] to seek further review in the Louisiana Supreme Court, which he did not do. As a result, the one-year AEDPA filing period began to run again on January 6, 2003, and did so uninterrupted for the remaining 289 days, until October 21, 2003.

The Court is aware that during that period, on June 11, 2003, Hamilton filed a writ application to the Louisiana Supreme Court seeking review of his appeal. This petition was not timely filed or submitted to the court, as noted above. Under La. S.Ct. R. X§5, an application seeking review of the judgment of the court of appeal shall be filed or postmarked within 30 days of the issuance of the judgment. *See Causey*, 450 F.3d at 604-05; *Marshall v. Cain*, 155 Fed. Appx. at 769, 2005 WL 3115095; *see also* La. Code Crim. Proc. art. 922(A). Hamilton's Louisiana Supreme Court writ was signed by him on May 12, 2003. Although the record does not indicate the postmark date, this signature date is the earliest date on which Hamilton could have submitted it to prison officials for mailing. The May 12, 2003, application was not timely under La. S. Ct. Rule X§5, and therefore was not properly filed for tolling purposes.

---

[31]The actual expiration date was January 3, 2003, which was a Saturday. Under Louisiana law, Hamilton would have had until the following business day, or Monday, January 5, 2003, to timely file his pleading. La. Code Crim. Proc. art. 13 (weekends and holidays not included in calculation of period less than seven days.)

Hamilton suggests in his traverse that he was unaware that the Louisiana Fourth Circuit had affirmed his conviction on direct appeal because of his many transfers within the state prison system. He claims that he did not receive a copy of the ruling until May of 2003 and then submitted the untimely writ application to the Louisiana Supreme Court. The prison transfers, he argues, accounted for his delayed filing in Louisiana Supreme Court and should be excused. Hamilton has submitted a copy of his prison record reflecting his transfers during the relevant period.

The record, on the other hand, clearly reflects that, while Hamilton was still housed in the Orleans Parish Prison, he had a copy of the Louisiana Fourth Circuit's December 4, 2002. In his April 7, 2003, application for writ of mandamus filed with the Louisiana Fourth Circuit regarding copies of his transcripts, Hamilton conceded that he had received "a copy of this Honorable Court [sic] decision March 10, 2003."[32] Hamilton also expressed his desire to attack this decision using the transcripts he sought.[33]

These statements are contrary to the representation he makes to this Court in his traverse, where he states that he did not receive the decision until early May of 2003 and immediately pursued review in the Louisiana Supreme Court. Hamilton's argument must be rejected.

The state pleadings reflect that Hamilton knew he needed to pursue relief in the Louisiana Supreme Court by or before April 7, 2003. In spite of this, he waited another two months to send his pleadings to the Louisiana Supreme Court. His efforts were not diligent nor was the entirety of his delay a result of his prison transfers so as to warrant further equitable tolling of any portion of this alternative calculation of the AEDPA filing period.

---

[32] St. Rec. Vol. 5 of 6, 4th Cir. Writ Application, 2003-K-0670, p. 3, 4/9/03.

[33] *Id.*

13

Hamilton's federal petition is deemed filed on June 8, 2006, which was over five and one-half years, or alternatively, over two and one-half years, after the AEDPA filing period expired. His petition must be dismissed as untimely.

## VI.     Recommendation

For the foregoing reasons, it is **RECOMMENDED** that David Hamilton's petition for issuance of a Writ of Habeas Corpus filed pursuant to Title 28 U.S.C. § 2254 be **DISMISSED WITH PREJUDICE** as time-barred.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within ten (10) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1430 (5th Cir. 1996).

New Orleans, Louisiana, this ____7th____ day of _____January_____, 2008.

_____
**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**